Patricia MURPHY & Locals 10 & 42, O.P.E.I.U., Plaintiffs/Counter–Defendant,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 406, Defendant/Counter–Plaintiff,**

No. 5:94–CV–98.

United States District Court, W.D. Michigan, Southern Division.

Dec. 27, 1994.

Robert G. Fleming, Lansing, MI, for Patricia Murphy, & Locals 10 & 42, O.P.E.I.U.

Michael L. Fayette, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, for International Brotherhood of Teamsters, Local 406.

## OPINION

QUIST, District Judge.

Plaintiffs brought this action seeking to vacate an arbitration award and defendant counterclaimed for enforcement of the award. This matter is presently before the Court on cross motions for summary judgment.

### Factual Background

The facts of this case are not in dispute. Defendant/Counter–Plaintiff General Teamsters Union, Local No. 406 (General Teamsters) is a labor organization headquartered in Grand Rapids, Michigan. During the relevant time period, General Teamsters had branch offices in Muskegon and Traverse City, Michigan. Patricia Murphy was a clerical employee of General Teamsters. Local 10, O.P.E.I.U. (Union) [1] represents the clerical workers at General Teamster's three offices. It negotiated a series of collective bargaining agreements with General Teamsters.

In February of 1977, Ms. Murphy began working for General Teamsters in its Grand Rapids office. In February of 1988, she transferred to the Muskegon office after she was the successful bidder for a vacant position. In August of 1992, the Muskegon office sustained extensive fire damage. Records from the Muskegon office were put in the back of a semi-trailer and taken to the parking lot behind General Teamster's Grand Rapids building. Ms. Murphy sorted the Muskegon records contained in the trailer and occasionally performed other miscellaneous work. She continued to be paid the contractual rate for the Muskegon clerk typist classification. Between August 12, 1992, and February 1, 1993, she did not bid on any Grand Rapids office job.

On February 1, 1993, Ms. Murphy was laid off. She immediately filed a grievance pursuant to the collective bargaining agreement. She alleged that her seniority rights had been violated because her "request" to bump a lower seniority employee in the Grand Rapids office who held the position "PBX operator—receptionist" was denied. The grievance was arbitrated.

The Arbitrator had to decide whether General Teamsters had violated Ms. Murphy's seniority rights. His decision involved the interpretation of several provisions of the collective bargaining agreement including Article III Section 3 entitled Seniority and Article V, Section 1 entitled Layoffs and Recall. These sections provide:

> Seniority shall mean length of continuous service with the Employer and shall be accumulative on an office-wide basis.

Article III, Section 3.

> If a reduction of the office staff is necessary, the employee with the least amount of seniority in any classification will be the first laid off.

Article V, Section 1.

The Union argued that all three locations comprised a single seniority unit. Consequently, Ms. Murphy could bump any less senior employee at any of General Teamsters' three locations regardless of position. According to the Union, strict seniority

---

1. It appears that Local 42 is the successor to Local 10.

should apply. General Teamsters argued that the three separate work locations constituted separate seniority units. Therefore, Ms. Murphy could not bump a Grand Rapids employee.

In an Opinion dated January 13, 1994, the Arbitrator concluded that "despite the fuzziness of the Article V language, the preferred interpretation is that when Employer determines in which classification employment will be reduced, the least senior employee in that classification will be the first laid off." Opinion and Award of Arbitrator at p. 11. Thus, the Arbitrator found that General Teamsters acted within its contractual rights. Ms. Murphy was the only occupant of that classification and her layoff did not violate the Contract. The arbitrator denied the grievance.

Plaintiffs brought this action to vacate the Arbitrator's award. They allege that the Arbitrator exceeded his authority. General Teamsters filed a counterclaim to enforce the Award. General Teamsters also seeks attorney's fees and costs.

### Discussion

■ When courts are called upon to review an arbitrator's decision, the standard of review is "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer–Stevens Co., v. United Steelworkers,* 913 F.2d 1166, 1169 (6th Cir. 1990). The Sixth Circuit recently reiterated the narrowness of this standard in *Bruce Hardwood Floors v. Southern Council of Indus. Workers,* 8 F.3d 1104 (6th Cir.1993). Questions relating to the interpretation of a collective bargaining agreement are for the arbitrator to decide. "[C]ourts have no business overruling [an arbitrator] because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car. Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.

*United Paperworkers' Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987) (citing *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362).

In this case, both parties cite *Cement Divs. National Gypsum Co. v. United Steelworkers,* 793 F.2d 759 (6th Cir.1986), in support of their position. In *Cement Divs.,* the Sixth Circuit explained that the strong policy favoring arbitration as a means of resolving labor disputes requires courts to refrain from reviewing the merits of an arbitrator's award. However, the court stated that an award could be reviewed to determine whether the arbitrator exceeded the limits of his contractual authority.

> Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from any sources, yet his award is legitimate *only so long as it draws its essence from the collective bargaining agreement.* When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.* at 766 (emphasis in original) (citations omitted).

The Sixth Circuit explained that an award fails to derive its essence from the agreement when "(1) an award conflicts with express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement." *Id.* (citations omitted).

Plaintiffs claim that the Arbitrator's ruling falls within enumerated grounds one and four. They allege that his award conflicts with the express terms of the contract and is supported by notions of equity and fairness rather than the terms of the agreement. According to plaintiffs, there was no ambiguity in the contract. The term "in any classification" meant that the least senior person was to be laid off even if that person was in another classification. Plaintiffs' contend

that the Arbitrator chose to ignore a portion of the contract and thus exceeded his authority.

 This Court does not agree that the Arbitrator's award conflicts with the express terms of the collective bargaining agreement. The Arbitrator focused on the language of the contract and formulated a decision that was rational. This Court believes that the contract language is subject to differing interpretations. Plaintiffs may disagree with the Arbitrator's interpretation. However, a "court should not reject an award on the ground that the arbitrator misread the contract." *Lattimer–Stevens*, 913 F.2d at 1169.

This Court is also not convinced that the Arbitrator impermissibly based his decision upon considerations of fairness rather than the language of the contract. The Arbitrator analyzed both parties' interpretation of the collective bargaining agreement then sided with the interpretation proposed by General Teamster's. "Employer's interpretation is strained.... The union's interpretation is more seriously flawed." Opinion and Award of Arbitrator at p. 8–9.

For the reasons discussed above, this Court will not vacate the Arbitrator's decision. Defendant/Counter–Plaintiff's Motion for summary judgment (docket no. 9) will be granted. Plaintiffs' Motion for Summary Judgment (docket no. 10) will be denied. An Order consistent with this Opinion will be entered.